IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| George Cleveland, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 8:09-626-HMH-WMC |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| City of Seneca SC; Bonnie Moses, | ) | |
| individually and in her official capacity as | ) | |
| election manager, director, poll worker for | ) | |
| the City of Seneca SC; Rick Lacey, | ) | |
| individually and in his official capacity as | ) | |
| Seneca Recreation Director; Terry Mullikin, | ) | |
| individually and in his official capacity as a | ) | |
| groundsman employed by the Seneca | ) | |
| Recreation Department; Mayor Pro Tem | ) | |
| Ronnie O'Kelly, individually and in his | ) | |
| official capacity as Mayor Pro Tem for the | ) | |
| City of Seneca; Seneca Police Department; | ) | |
| Police Chief John Covington, individually | ) | |
| and in his official capacity as Police Chief | ) | |
| for the City of Seneca; Officer(s) John | ) | |
| Doe(s) in their official capacity as police | ) | |
| officers for the City of Seneca, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court with the Report and Recommendation of United States

Magistrate Judge William M. Catoe, made in accordance with 28 U.S.C. § 636(b) and Local

Civil Rule 73.02 of the District of South Carolina.[1]  Defendants filed a motion for summary

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court.  See Mathews v. Weber, 423 U.S. 261, 270 (1976).  The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made.  The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions.  28 U.S.C. § 636(b)(1) (2006).

1

judgment on October 27, 2009. Plaintiff George Cleveland ("Cleveland") filed a motion for a temporary restraining order ("TRO") on January 12, 2010. In his Report and Recommendation, Magistrate Judge Catoe recommends granting Defendants' motion for summary judgment and denying Cleveland's motion for a TRO.

## I. Factual and Procedural History

Cleveland filed a pro se complaint against Defendants on March 12, 2009, and an amended complaint on August 10, 2009, alleging a violation of his constitutional right to free speech. On March 11, 2008, the City of Seneca, South Carolina held its regular municipal elections at the Shaver Complex ("the Complex"). (Am. Compl. 1.) Cleveland arrived at the Complex on the day of the March 11, 2008 elections to "greet voters" and "ask the voters to read [a] piece of paper before voting." (Id. at 2.) Cleveland "walked inside the [Complex] to greet voters [and] also distributed [his] information." (Id.) Defendant Bonnie Moses ("Moses"), the election director, informed Cleveland that he could not distribute political literature within the voting precinct. (Id.) Cleveland alleges that he took his literature to his car and returned back to the Complex to greet the voters "just like the candidates were." (Id.) "Minutes later [Moses] . . . informed [Cleveland] that [he] was being a nuisance [and] that [he] should leave." (Am. Compl. 2.) Moses alleges that several voters complained to her about Cleveland bothering them while they were in line to vote. (Defs. Mem. Supp. Summ. J. Exs. (Moses Dep. 17-18).) Cleveland is not a resident of Seneca, South Carolina.

Defendants filed a motion for summary judgment on October 27, 2009. Cleveland filed a memorandum in opposition to summary judgment on November 30, 2009, and a motion for a TRO on January 12, 2010. Defendants filed a memorandum in opposition to the motion for a

2

TRO on January 28, 2010. Cleveland filed a reply to the motion for a TRO on February 1, 2010. Magistrate Judge Catoe recommends that the court grant Defendants' motion for summary judgment and deny Cleveland's motion for a TRO. (Report and Recommendation 9.) Cleveland filed objections on March 4, 2010.

## II. Discussion of the Law

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Moreover, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

3

## B. Objections

Cleveland filed objections to the Report and Recommendation. Objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Upon review, the court finds that many of Cleveland's objections are non-specific, unrelated to the dispositive portions of the magistrate judge's Report and Recommendation, or merely restate his claims. However, Cleveland submitted one specific objection. He asserts that the magistrate judge "failed to address and weigh into [his] decision the fact that [Cleveland] has strong evidence that proves in contrary to what Defendants allege." (Objections 2.)

Cleveland argues that the First Amendment allows him to "stand on government property peacefully because there were no materials being handed out, nor [was he] harassing any voter." (Id. at 1.) According to Cleveland, the magistrate judge "erred by not reading [his] transcripts" which "prove that [he] was not harassing any voter or handing out material on the 2nd trip to [the] Complex." (Id.) Cleveland asserts that he wore a "digital tape recorder on his person[]" on March 11, 2008, because he "knew that City Officials would lie about the actions that took place." (Id.) Cleveland has provided a written transcript that allegedly transcribes the recordings of his digital tape recorder from March 11, 2008. (Pl. Mem. Opp'n Summ. J. Ex. 1 ("Transcript).) Cleveland, however, has not provided the court with an actual audio recording.

> Pursuant to S.C. Code. Ann. § 7-25-180(A),
>
>> [i]t is unlawful on an election day within two hundred feet of any entrance used by the voters to enter the polling place for a person to distribute any type of campaign literature . . . . The poll manager shall use every reasonable means to keep the area within two hundred feet of any such entrance clear of political literature and displays.[2]

Cleveland admits that Moses "explained [to him that he] could not hand out [his] material or talk to the voters within 200 feet of the door [of the Complex]." (Objections 1.) Managers of elections, such as Moses, "possess full authority to maintain good order at the polls and to enforce obedience to their lawful commands during an election." S.C. Code. Ann. § 7-13-140 (1976). Cleveland admits that he was within 200 feet of the Complex handing out literature addressing his "political suspicions." (Am. Compl. 1-2.) Additionally, Cleveland states that he "greeted" voters "just like the candidates" despite the fact that he was not a candidate and does not reside within the city limits of Seneca. (Id.)

> [T]here is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs. This of course includes discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes.

Mills v. Alabama, 384 U.S. 214, 218-19 (1966). Nevertheless, "expressive activity, even in a quintessential public forum, may interfere with other important activities for which the property is used." Burson v. Freeman, 504 U.S. 191, 197 (1992). As such, the United States Supreme Court has consistently held that "a State has a compelling interest in protecting voters from

---

[2] Cleveland does not appear to contest the constitutionality of S.C. Code Ann. § 7-25-180; rather he alleges that he should have been able to remain on the Complex property after he stopped distributing his literature.

confusion and undue influence." Id. at 199. Moses states that she received voter complaints that Cleveland was bothering them while they were in line to vote. (Def. Mem. Supp. Summ. J. Exs. (Moses Dep. 17).) In an effort to maintain order, Moses asked Cleveland to leave the polling area. (Id. Exs. (Moses Dep. 20-22).) Cleveland has provided no objective evidence that Moses' statements regarding voter complaints are false. Moreover, Cleveland admits that he spoke to voters as they entered the Complex. Cleveland has failed to provide sufficient evidence to establish that his First Amendment rights were violated. Cleveland was informed that he was free to distribute his literature and speak with voters provided it was not within 200 feet of the front door of the Complex. (Id. Exs. (Moses Dep. 13-14).) South Carolina provides election managers, like Moses, with the ability to maintain peace and order in the immediate vicinity of a voting area on an election day. The United States Supreme Court has held that "an examination of the evolution of election reform, both in this country and abroad, demonstrates the necessity of restricted areas in or around polling places . . . [and that] *some* restricted zone is necessary in order to serve the States' compelling interests in preventing voter intimidation and election fraud." Burson, 504 U.S. at 200, 208. Accordingly, even upon viewing the facts in the light most favorable to Cleveland, he has failed to demonstrate that Defendants abridged his First Amendment right of freedom of speech.

Based on the foregoing, the court adopts the Report and Recommendation of Magistrate Judge Catoe and grants Defendants' motion for summary judgment and denies Cleveland's motion for a TRO.

It is therefore

**ORDERED** that Defendants' motion for summary judgment, docket number 48, is granted. It is further

**ORDERED** that Cleveland's motion for a TRO, docket number 61, is denied.

**IT IS SO ORDERED.**

                                                  s/Henry M. Herlong, Jr.
                                                  Senior United States District Judge

Greenville, South Carolina
March 23, 2010

## NOTICE OF RIGHT TO APPEAL

The Plaintiff is hereby notified that he has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.